BLAMPEY v. PIKE.[1]

VENDOR AND PURCHASER—CONTRACTS—RESCISSION—FRAUD.

> On a bill filed for the rescission of a certain agreement and a reconveyance in a transaction which amounted to an exchange of properties, and where complainants, husband and wife, the former understanding the English language imperfectly and the latter at times insane, after discovering that they had been defrauded, made a settlement and surrendered their contract for a nominal sum, it appearing that they had been defrauded by false representations as to the quality and value of defendant's land for which they had deeded premises worth $2,000 and contracted to pay a balance of $1,350. *Held* that complainants are entitled to the relief prayed and to have the settlement set aside as fraudulent.

Appeal from Cheboygan; Shepherd, J. Submitted November 13, 1908. (Docket No. 31.) Decided February 2, 1909.

Bill by Walter Blampey and another against Sidney J. Pike and another to set aside certain deeds on the ground of fraud. From a decree for complainant, defendants appeal. Modified and affirmed.

------

[1] Headnotes prepared by McALVAY, J.

*Reilley & McPhee,* for complainants.

*Frost & Sprague,* for defendants.

McALVAY, J.   This controversy arises from a transaction in real estate between the parties.   Complainants owned and occupied a parcel of land of about 10 acres, near the city of Cheboygan, in Cheboygan county.   Defendant Pike owned a farm of 200 acres in the same county.   An agreement in writing was entered into between the parties on May 21, 1906, whereby defendant Pike and his wife, in consideration of $3,350, agreed to sell and convey to complainants this farm.   The payments agreed upon were $2,000 on the delivery of the contract, and the balance in five equal annual payments of $270 each, with interest at 5 per cent.   On the same date complainants conveyed to defendant Grace Pollock their property above described in consideration of $2,000.   This was the payment of $2,000 mentioned in the land contract, and Grace Pollock was named as grantee at the request of defendant Pike.   The transaction amounted to an exchange of properties, and the agreement by complainants to pay the sum of $1,350, the difference between the price of complainants' property and defendants' farm.   Complainants claim that they were induced to part with their property and purchase this farm by reason of the false and fraudulent representations that this was as fine a farm as was in the county; that it was good for producing hay, and it was fertile and good for all kinds of crops; that they relied upon such false representations, being inexperienced in farming lands; that in truth and in fact this land was very poor and run down; that it was a very light, sandy soil; that it was not grass land, or fertile farming land.   The record shows that they were taken over this place by defendant Pike shortly before the exchange was made, and their claim is that he repeated these statements and pointed out to them grass starting to grow, which was, in fact, June grass.   On

155 MICH.—25.

June 16, 1906, after complainants claim they discovered that the farm was not as represented, and as they believed, and had so informed defendant, he after some talk made a settlement with them, giving them two unimproved 40-acre parcels of this land and $100 in cash, retaining the land they had deeded to defendant Grace Pollock. The bill of complaint, after setting forth the facts, prays for an injunction, for a reconveyance of the land they parted with, and for general relief. On the hearing a large amount of testimony was taken from the 40 witnesses who testified in the case. The trial court found that the proofs entitled complainants to relief, and granted a decree accordingly. We agree with him that complainants were entitled to the relief granted. There are no law questions in the case necessary to be discussed. The material questions are upon the facts; defendants insisting that complainants have not made a case upon this record entitling them to relief. Some criticism is made of the construction of the bill of complaint, and an intimation that the relief granted is broader than the allegations and prayer of the bill warranted. Defendants answered this bill, and issue was regularly joined. The answer traverses or denies every material allegation of the bill, and the proofs offered by both parties indicate that each understood the issue that was being tried, and that it covered every proposition upon which the relief granted is based, and the relief so granted is within the prayer for general relief.

It is not our purpose to digest and quote from the testimony in the record, but an examination satisfies us that the court was exceedingly moderate in his characterization of the conduct of defendant Pike in this transaction. The record discloses, as the court in a brief opinion stated:

"Walter Blampey is a slow-witted, hard-working man who understands English but imperfectly. All of the business of the family is transacted by Mrs. Blampey, an impulsive Irish person, subject to alternate fits of depression and exaltation, with a reputation for the past 20

years of being at times insane. This reputation is supported by her conduct in court and by testimony."

In considering the evidence in the record covering these transactions with complainants, we find ample proof to justify the finding that defendant Pike did actually make misrepresentations to complainants substantially as claimed. This land at the time of the trade was, the court says, "not much better than sand plains." It was represented as a good farm, immediately productive. Complainants did not know its history, did not know June grass on sand was practically valueless for the purposes of a crop of hay. They were not farmers, nor acquainted with the character of farm soils.

The court says further:

"The alleged settlement is so intimately connected with the original transaction that it ought to fall to the ground with it. Considered alone, it is so unconscionable as to bear upon its face the evidence of Mrs. Blampey's incompetence at that time, and is so like to duress as to be subject to like consequences. I am clearly of the opinion that the facts here afford a case requiring equitable interference."

We agree with the trial court upon this finding. Defendants urge that the sale and the settlement were separate and distinct transactions, and cannot be considered together. They were different acts relative to the same subject-matter. At the settlement the contract of sale was produced, and complainants were required to sign a settlement and surrender indorsed thereon. We find no explanation in the record or briefs of defendants of the fairness of a settlement where the result was that defendant Pike retained property accepted by him as worth $2,000 in the trade, for which he allowed complainants $100 cash and sand land worth perhaps $100 more. This transaction operated to take from complainants their property, and leave them with practically nothing.

The decree of the circuit court is modified and affirmed. The disposition made by the court of the $100 paid com-

plainants on the so-called settlement will be final without further taking proofs, and complainants will by deed reconvey to Mr. Pike the 80 acres of land deeded them, complainants to recover costs.

Montgomery, Ostrander, Hooker, and Moore, JJ., concurred.